UNITED STATES v. BEDOUIN S. S. CO., Limited.

(District Court, S. D. New York. April 12, 1912.)

1. SHIPPING (§ 42*)—CHARTER—ABANDONMENT OF VOYAGE—RIGHT OF CHARTERER TO RECOVER FOR COAL CONSUMED.

Where a charter of a steamship required the charterer to furnish coal, and after she had entered on her voyage the vessel proved unseaworthy, and was obliged to return to the port of departure and abandon the voyage, the charterer is entitled to recover the value of the coal consumed on the uncompleted voyage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 156–164; Dec. Dig. § 42.*]

2. SHIPPING (§ 42*)—CHARTER—ABANDONMENT OF VOYAGE—CROSS-DEMANDS OF CHARTERER AND OWNERS.

The United States chartered a steamship for a voyage to Manila, to report for loading at San Francisco at a specified date, the government to furnish her coal. The vessel was at Seattle, and was requested by the government to load bunker coal at Tacoma before proceeding to San Francisco, which she did. After leaving San Francisco, she proved unseaworthy and returned, and the voyage was abandoned. *Held* that, in the absence of any agreement or claim therefor at the time, the vessel was not entitled to freight on the coal carried from Tacoma to San Francisco as a set-off against the claim of the government for the value of the coal consumed on the abandoned voyage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 156–164; Dec. Dig. § 42.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by the United States against the Bedouin Steamship Company, Limited. Decree for libelant.

See, also, 167 Fed. 863.

Henry A. Wise, U. S. Atty., and Addison S. Pratt and Frank M. Roosa, Asst. U. S. Attys.

Wallace, Butler & Brown (Frederick M. Brown and Homer L. Loomis, of counsel), for respondent.

HOLT, District Judge. This is a suit by the United States to recover damages from the respondent, the owner of the steamer Arab. The government chartered the Arab for a voyage from San Francisco to Manila. The steamer was not seaworthy, and, after leaving San Francisco, she was obliged to return to that port and abandon the voyage. All the issues in the case have been settled, by the payment by the respondent to the government of $6,715.05, except the claim of the government to recover $1,831.30 for coal consumed on the voyage, and a claim of the respondent to set off a substantially similar sum for freight for transporting certain coal from Tacoma to San Francisco, which claims were left to be litigated in this suit.

[1] I think that the claim of the libelant to recover $1,831.30 for the 508 tons of coal consumed between April 1 and April 11, 1901, on the voyage from San Francisco out and back to San Francisco, is valid. The steamer being unseaworthy when she started, the value of the coal burned on the useless voyage was a direct loss to the United States, which it is entitled to recover. In my opinion, the government has waived the defense that the counterclaim should have been submitted to the accounting officers of the treasury. No such defense is alleged in the answer, and the stipulation leaves the issue in respect to that counterclaim to be determined in this suit.

[2] On the merits, I think that the claim for freight for carrying the bunker coal from Tacoma to San Francisco, alleged as a set-off, cannot be maintained. The original charter provided that the United States would furnish all the fuel necessary to propel the vessel; but that obligation did not become in force until the vessel was delivered at Seattle on October 20, 1900. By the second charter party, it is provided that the charter would be continued upon the vessel's reporting for loading at San Francisco, to commence at 6 a. m. on March 22, 1901. The vessel then being at Seattle, the owners were obliged to deliver her at San Francisco by March 22d, and the government was not obliged to pay for the coal necessary to take her there. The stipulation states:

"The Arab was accordingly prepared to sail from Seattle in season to arrive at San Francisco prior to 6 a. m. March 22, 1901, but at the request and command of the United States government sailed from Seattle, March 14, 1901, bound for Tacoma, to take on bunker coals at that port."

There was apparently nothing in the relation of the parties to authorize the United States to command the vessel to go to Tacoma, or which compelled the vessel to accede to the request and command to go to Tacoma. It did accede to the request, however, and went

to Tacoma, and there took on bunker coals during four days.' It is stated in the briefs filed that the owner of the steamer was paid for those · four days at the charter rate of $425 per day, and that that amount was afterwards refunded to the ·government. No ·such facts are stated in the stipulation, and I fail to see that they would be material if they had been, stated. The taking on of those coals at Tacoma saved an equal amount of time necessary to take, on coal at San Francisco. It was a favorable arrangement for the government, because it obtained its coal at Tacoma cheaper than it would have obtained it at San Francisco. The owners of the steamer acquiesced in the request, apparently because they had to go to San Francisco, and it made no real difference to them whether they took on bunker coal at Tacoma, instead of at San Francisco, or whether they took coal down on the trip or went light.

The counsel for the respondent claims that it might have earned freight going down. If that were so, it should have demanded freight for carrying the coal at the time. The vessel started from San Francisco on the voyage to Manila without making any claim then or at any previous time for the transportation of the coal. There is no claim that any agreement was made to pay freight for transporting such coal. The respondent now claims to set off the amount of the reasonable freight for carrying the coal from Tacoma to San Francisco against the government's claim for the coal burned on the voyage which was abandoned. I think it would have made no claim if the voyage had been successfully prosecuted to Manila, and that the present claim of set-off is a mere afterthought.

The argument that the government lost nothing on the general transaction, because the coal which it purchased at Tacoma for $3.60 a ton was worth in San Francisco $7.80 a ton, seems to me immaterial. The government was entitled to whatever profit might result from a difference in the price of coal in a different port, and the fact of such difference in the price has, in my opinion, nothing to do with the legal liability of the parties to the charter. '

My conclusion is that the libelant is entitled to recover the amount sued for, of $1,831.30, with interest from April 11, 1901, and costs.